IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE JAMES SMALLWOOD | CRIMINAL ACTION NO.<br>2:20-CR-00023-SCJ-JCF-1 |

### DEFENDANT JESSE JAMES SMALLWOOD'S BRIEF IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE RESULTING IN A WARRANTLESS SEIZURE OF MR. SMALLWOOD AND AUTOMOBILE SEARCH

COMES NOW DEFENDANT, JESSE JAMES SMALLWOOD and files this brief in support of his motion to suppress evidence. On November 4, 2020, Mr. Smallwood filed a motion to suppress evidence resulting in a warrantless seizure of Mr. Smallwood and Automobile Search. [Doc. 86]. An evidentiary hearing was conducted on April 28, 2021. [See Doc. 141, Transcript of Evidentiary Hearing ("Tr.")].

**I.     STATEMENT OF FACTS**

In the early morning hours of June 2, 2020, Mr. Smallwood was approached by Gainesville Police Department ("GPD") officer, Israel Cazares, while Mr. Smallwood was seated inside his car. The car was parked at the QuikTrip located at 1910 Jesse Jewell Parkway in Gainesville, Georgia. Inside the car was Mr. Smallwood and four males. Officer Cazares directed Mr.

Smallwood to step out of his car. Officer Cazares questioned Mr. Smallwood, arrested him and searched his car.

Mr. Smallwood was incarcerated at the Hall County Jail until he was transferred to the Robert A. Deyton detention facility after he was charged in a federal indictment filed in this district on June 16, 2020. Mr. Smallwood and the four males in the car on June 2, 2020 were charged in an indictment with conspiracy to commit arson, and arson, in violation of federal laws. On June 23, 2020, Mr. Smallwood appeared by video for his initial appearance in the instant case.

Mr. Smallwood's motion to suppress challenges the June 2, 2020 stop and search of his car and, any statements made by Mr. Smallwood following his detention. Specifically, Mr. Smallwood moves to suppress all fruits obtained from the illegal search and seizure, including any flare gun, flare casings or ammunition, fingerprints, and any other physical evidence taken as a result of that seizure, as well as any statements allegedly made by Mr. Smallwood subsequent to the unlawful search and seizure.

At the evidentiary hearing on April 28, 2021, witnesses testified about the June 2, 2020 stop, arrest and search of the car.

GPD Officer Andrew Shoemaker testified he was just finishing his patrol shift when he heard a call over dispatch about a patrol car being on fire. (Tr.,

2

at 8). He knew the courtesy officer who lived at the apartment complex so he headed to respond to the call. (Id. at 9). When Officer Shoemaker arrived at the scene, he saw the patrol car on fire and used his fire extinguisher to put out the fire. (Id. at 11). Officer Shoemaker testified that his supervisor, Sergeant Jones, spoke with a caller who provided a description of an older model classic vehicle, Impala size, with 4-5 males in the car, dark in color. (Id. at 12).

A BOLO was issued for a car matching that description and Officer Shoemaker testified that he saw a car matching that description: "an older model black Crown Vic… and I saw four to five, I thought it was four but it could be five later on, but there were four individuals in the car." (Id. at 15). Officer Shoemaker testified that the car "was stopped at a red light at E.E. Butler waiting to turn left." (Id.). Officer Shoemaker did not follow the car but called it into dispatch. (Id. at 16).

When Officer Shoemaker called it into dispatch there was no description about whether the windows were up or down, or whether the car was the same color throughout top and bottom, or what color the occupants' skin was, or whether they had any facial hair or wore hats or glasses, just that there was a car matching the earlier description stopped at a light at E.E. Butler headed south. (Id. at 32). Officer Shoemaker had no idea where the car went as he did

not follow it and, admittedly, he did not know if it was the same car later found at the QuikTrip. (Id. at 33).

GPD Officer Israel Cazares was also on patrol duty the morning of June 2, 2020 when he heard the description over the radio of "an older model, classic dark-colored car occupied by multiple people." (Id. at 41). The previous evening, protests were held in Gainesville related to the death of George Floyd. (Id. at 39). Officer Cazares testified that he and multiple officers were looking for the car described in the BOLO. (Id. at 42). Officer Cazares testified that he heard Officer Shoemaker relay over the dispatch radio that he had seen the car in the BOLO description. (Id. at 44-45). Officer Cazares headed in the direction where Officer Shoemaker said he saw the car. (Id.). Officer Cazares testified that he saw a "dark-colored Crown Victoria sitting in the parking lot" and he pulled into the QT. (Id. at 47).

Officer Cazares testified that he parked his car at an angle facing the car, turned on his lights and approached the car. (Id. at 49). As he approached the car, Officer Cazares activated his body camera.[1] (Id.). Officer Cazares testified

---

[1] The government tendered, and the court admitted, a copy of the recording from Officer Cazares' body camera at the hearing, as Government's Exhibit 1 (hereinafter referred to as "Vid."). (Id. at 63).

that he did not have a recording from the in-car camera because it had previously been malfunctioning. (Id. at 50-51).

While he could not remember, Officer Cazares shone a flashlight in the driver's face as he approached the car. (Vid., at 00:34). With a second uniformed officer approaching from the right and another officer approaching from the rear, Officer Cazares ordered the driver, Jesse Smallwood, to step out of the car. (Id.) (Tr., at 53). While maintaining the flashlight pointed at Mr. Smallwood, Officer Cazares immediately began firing questions at Mr. Smallwood, asking about his whereabouts and his activities that night. (Vid., at 00:56). Officers from multiple agencies arrived simultaneously on the scene during this time. (Vid., at 00:37).

After questioning Mr. Smallwood about his whereabouts, Officer Cazares testified that he asked him if he could search his car "to which he initially didn't give a definite answer so I then asked for clarification…[b]ecause he didn't say yes or no, he was just kind of re-asking my question about searching the vehicle." (Tr., at 55-56).

Mr. Smallwood was searched and no weapons were found on his body. (Id. at 59). Officer Cazares testified that he told Mr. Smallwood to step out of his car. (Id. at 73). Mr. Smallwood was not free to leave. (Id. at 73-74). Mr. Smallwood was detained. (Id.). At no point did Officer Cazares advise Mr.

5

Smallwood of his *Miranda* rights.  (Id. at 85).  Multiple law enforcement officers in full uniform and numerous marked patrol cars were at the QuikTrip during this time.  (Vid., at 11:12).  Every law enforcement officer on the scene was in full uniform and between the officers and their cars, Mr. Smallwood and his car were surrounded.  (Id. at 77-78).

Officer Cazares testified that he was assisted by a Hall County Deputy in the search of the car.  (Id. at 58).  The Hall County Deputy found shell casings.  (Id. at 60).  Officer Cazares found a flare gun in the little pouch behind the driver's seat.  (Id.).

## II.    ARGUMENT AND CITATION OF AUTHORITY

The Fourth Amendment to the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. CONST. amend IV.  The Supreme Court has stated, regarding the protections against search and seizure provided by the Fourth Amendment:

> This protection reaches all alike, whether accused of a crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws.  The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the

> support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

*Weeks v. United States*, 232 U.S. 383, 392, 34 S. Ct. 341, 344 (1914).

"Reasonableness" is the ultimate touchstone for addressing the constitutionality of a search under the Fourth Amendment. *See Florida v. Jimeno*, 500 U.S. 248, 250, 111 S. Ct. 1801, 1803 (1991). The general rule in the criminal context is that warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412 (1978) (quoting *Katz v. United States*, 398 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)); *see also United States v. McGregor*, 31 F.3d 1067, 1068 (11th Cir. 1994).

Traffic stops conducted by law enforcement officers are "seizures" of one's person within the meaning of the Fourth Amendment. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). The Constitution tolerates those intrusions, but *only* when they are done in a manner that is "reasonable." The legality of vehicle stops is analyzed under the standard set forth in *Terry v. Ohio*, which permits a police officer to stop and briefly detain a person "for purposes of investigating possible criminal behavior even though there is not probable cause for an arrest," as long as there is reasonable articulable suspicion that the individual has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S.

1, 21-22, 88 S.Ct. 1868, 1880 (1968). Under the automobile exception to the warrant requirement, "agents may conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006). However, it has long been established that such stops cannot be baseless, simply routine, or indefinite. Instead, a reasonable police traffic stop is one that is supported by reasonable suspicion and limited in scope and duration. *Purcell*, 236 F.3d at 1279; *see also United States v. Everett*, 601 F.3d 484, 488–89 (6th Cir. 2010).

The Government has the burden to prove that departure from the warrant requirement was justified. *United States v. Blasco*, 702 F.2d 1315 (11th Cir. 1983). Under the doctrine of the fruit of the poisonous tree, if the initial seizure and search was illegal then evidence seized subsequently or derived from the illegal seizure, including statements, should be suppressed. *See New York v. Harris*, 110 S.Ct. 1640, 1643 (1990); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254 (1975); and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963).

Whether an individual's consent to a warrantless search was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances. *United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001). The government bears the burden of proving that the consent was not a function of

acquiescence to a claim of lawful authority, but rather was given freely and voluntarily. *United States v. Tovar-Rico*, 61 F.3d 1529 (11th Cir. 1995). The Eleventh Circuit has enumerated a non-exhaustive list of factors to be considered when determining whether consent was voluntary: voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found. *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir.1984), *vacated,* 741 F.2d 1363, *reinstated on reh'g,* 764 F.2d 747 (11th Cir.1985) (en banc)(*quoting United States v. Phillips,* 664 F.2d 971, 1023-24 (5th Cir. Unit B 1981) (footnotes omitted)).

"'Consent' that is the product of official intimidation ... is not consent at all." *Florida v. Bostick,* 501 U.S. 429, 438 (1991). "[F]or consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir. 1989).

Analysis of the factors shows that the consent here was not voluntary but was mere acquiescence to a show of authority. Mr. Smallwood was not free to leave; he was not told he could refuse consent; he was asked for consent after being removed from his car by a uniformed police officer. If Mr. Smallwood

gave consent prior to the car being searched, then he did not do so freely and voluntarily, but merely acquiesced to a show of authority.

### 1. Custodial Status

Mr. Smallwood was removed from his car when GPD Officer Cazares directed him to step out of his car. Officer Cazares testified Mr. Smallwood was not free to leave, he was unquestionably detained. While he was not handcuffed at the moment that the alleged consent was given, he clearly did not believe he was free to leave. This factor weighs in favor of the consent not being voluntary.

### 2. Presence of Coercive Police Procedure

This factor also weighs in favor of finding consent not to be voluntary. Numerous law enforcement officers from various law enforcement agencies were present at the QuikTrip on June 2, 2020. Each officer was uniformed and armed and each officer had his/her own police vehicle that surrounded Mr. Smallwood and his car. These tactics were designed to intimidate and create compliance, not generate voluntary consent.

### 3. The Extent of Cooperation with the Police

On June 2, 2020, Jesse Smallwood was a 21 year old kid who had never been in any trouble with the police. Naturally, he was cooperative when he

was approached by Officer Cazares, however, that alone cannot render the consent voluntary.

### 4. Awareness of Right to Refuse Consent

Mr. Smallwood was never told he could refuse to consent to a search of his car. This factor weighs in favor of finding no valid consent.

### 5. Belief Incriminating Evidence Would Be Found

There is no evidence in the record about Mr. Smallwood's belief as to whether incriminating evidence would be found in his car. All that we know is that he had never been in trouble before and felt pressured to consent to a search of his car. This factor also weighs in favor of finding consent was not voluntarily given.

Officer Cazares chose not to tell Mr. Smallwood that he could refuse consent to search his car. As is evident on the video recording and supported by Officer Cazares' testimony, Mr. Smallwood did not definitely answer when asked if his car could be searched. Instead, he repeated Officer Cazares' question, a common stall tactic.

Pursuant to the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 468-69, 86 S.Ct. 1602, 1625 (1966), a suspect who is in custody must be advised of his rights to remain silent and to the assistance of counsel prior to any interrogation. Evidence obtained in violation of *Miranda* is inadmissible,

11

and the government bears the burden of showing that a defendant made a knowing, intelligent, and voluntary waiver of his right to counsel. *See United States v. Pharr*, 716 F.2d 796, 817 (11th Cir. 1983).

Any statements made by Mr. Smallwood on June 2, 2020 when he was ordered out of his car and questioned in the parking lot of the QuikTrip, without any valid waiver of his *Miranda* rights, should be suppressed. There is no dispute, and in fact, Officer Cazares admitted during the evidentiary hearing, that Mr. Smallwood was detained and not free to leave when he was questioned by Officer Cazares. (Id. at 73-74).

Mr. Smallwood believes that law enforcement lacked the requisite level of constitutional cause to stop and arrest him. Additionally, there was no basis to search his car without a warrant. It is undisputed that the stop and arrest of Mr. Smallwood was conducted without a warrant. The June 2, 2020 stop and search of Mr. Smallwood's car and person yielded several pieces of evidence relevant to Mr. Smallwood's suppression motion: the shell casings and the flare gun found during the search of the car. Mr. Smallwood asserts that the evidence found in the car on June 2, 2020 should be suppressed because there was no probable cause to support a warrantless search. Moreover, Mr. Smallwood did not voluntarily consent to a search of his car. Surrounded by uniformed and armed police officers in the early morning hours after attending

a protest for the death of George Floyd, an unarmed man killed by a police officer just a few weeks earlier, Mr. Smallwood did not voluntarily consent to a search of his car but merely acquiesced to a show of authority. The government bears the burden of justifying the actions of its officers. *Katz v. United States*, 389 U.S. 347, 357 (1967); *see also United States v. McGregor*, 31 F.3d 1067, 1068 (11th Cir. 1994). For all of the above reasons, Mr. Smallwood's statements and the search of his car should be suppressed.

### III. CONCLUSION

Wherefore, for all the above-stated reasons, Mr. Smallwood respectfully requests that this Court grant his motion to suppress the evidence obtained in the warrantless search of his car, which was not supported by probable cause nor by a voluntary consent, and any statements made by Mr. Smallwood in violation of his *Miranda* rights.

Respectfully Submitted, this 10th day of June, 2021.

/s/ Judy A. Fleming
JUDY A. FLEMING
GEORGIA BAR NO. 431198
ATTORNEY FOR MR. SMALLWOOD

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530; Fax: (404) 688-0768
Judy_Fleming@fd.org